IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND MATHIS, | ) | |
| AIS #140252, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.1:08-CV-336-WKW |
| | ) | [WO] |
| | ) | |
| SHERIFF ANDY R. HUGHES, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This cause of action is pending before the court on a 42 U.S.C. § 1983 complaint filed on

May 6, 2008 by Raymond Mathis ["Mathis"], an inmate currently incarcerated in the state prison

system and frequent litigant before this court. In the instant complaint, Mathis asserts the defendants

denied him adequate medical treatment for chronic back pain during his confinement in the Houston

County Jail. Mathis names Andy R. Hughes, the sheriff of Houston County, Alabama, Keith W.

Reed, commander of operations at the Houston County Jail, Sgt. Kim Turner, a correctional officer

for the jail, Jason Smoak, a certified physician's assistant employed by the jail, and Dr. Sam Banner,

a physician for the jail, as defendants in this cause of action. Mathis seeks treatment by a free-world

physician and any other relief the court deems appropriate. *Plaintiff's Complaint - Court Doc. No.*

*1* at 4.

The defendants filed a special report and supporting evidentiary materials addressing the claim presented in the complaint. Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. *Order of July 22, 2008 - Court Doc. No. 17*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the report/motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of

---

[1] Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules. These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Mathis is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require

4

submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

5

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Mathis fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

#### A.  Suit Against Defendants in Their Official Capacities - Absolute Immunity

To the extent Mathis sues the defendants in their official capacities, they are immune from monetary damages.[2] Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials

---

[2]Under all facets of Alabama law, a county sheriff, his jailers and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11ᵗʰ Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11ᵗʰ Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11ᵗʰ Cir. 1989).

### B. Medical Treatment for Back Pain - Deliberate Indifference[3]

Mathis possesses an extensive criminal history including voluminous convictions before the state courts of Houston County, Alabama beginning in the 1980's and continuing until the filing of this case.[4] In 2005, Mathis entered the Houston County Jail on a charge of third degree burglary and

---

[3]Mathis alleges the denial of treatment occurred for several months prior to his filing this cause of action. The pleadings therefore indicate that the alleged denial of medical treatment which forms the basis of the instant complaint may have occurred both prior to and after Mathis' incarceration pursuant to a sentence of confinement imposed by the Circuit Court of Houston County, Alabama arising from a criminal offense. Thus, the complaint relates to medical treatment provided during Mathis' status as a pretrial detainee and convicted felon. Nevertheless, regardless of Mathis' status in the jail, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11ᵗʰ Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11ᵗʰ Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11ᵗʰ Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11ᵗʰ Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

[4]The records of this court in the numerous cases filed by Mathis establish his criminal history. This court takes judicial notice of its own records.

on an offense for first degree receiving stolen property for which an indictment had issued against Mathis on December 3, 2004. *See Mathis v. Glover, et al.*, Civil Action No. 1:05-CV-1084-MHT-TFM (M.D. Ala. 2008), *Defendants' Exhibit D - Court Doc. No. 18-15* at 1- 4. A grand jury returned an indictment against Mathis for the burglary offense on June 10, 2005. *Id*. at 2. This previous record further demonstrates that Mathis entered a guilty plea to third degree burglary on March 29, 2006 and the trial court imposed a sentence of four (4) years imprisonment for this conviction. The records before the court in yet another civil rights action filed by Mathis, *Mathis v. Hughes, et al.*, Civil Action No. 1:08-CV-277-MEF-TFM, likewise establish Mathis entered a guilty plea to the receiving stolen property charge on November 16, 2005 and received a sentence of three (3) years imprisonment for this offense. *Mathis v. Hughes, et al.*, Civil Action No. 1:08-CV-277-MEF-TFM, *Defendants' Exhibit J - Court doc. No. 38-2* at 1.[5] The state court awarded Mathis 228 days of jail credit for time served in the county jail on this offense, ordered the sentence split with Mathis to serve 15 months imprisonment with the "balance of [s]aid sentence suspended on the condition of good behavior and payment of fines, costs and restitution for a period of 24 months at $50 per month [to] begin Jan. 15, 2006." *Mathis v. Hughes, et al.*, Civil Action No. 1:08-CV-277-MEF-TFM*, Defendants' Exhibit K - Court Doc. No. 38-3* at 15 and *Plaintiff's Exhibit B to Response - Court Doc. No 40-2*. Mathis subsequently secured his release from confinement on these charges.

On October 31, 2007, the trial court issued an alias warrant of arrest for Mathis in his

---

[5]The trial court did not delineate this sentence as a concurrent sentence, and, therefore, under applicable state law, the sentence at the time of imposition is a consecutive sentence to any other imposed term of incarceration. *Ala. Code* § 14-3-38(a) ("When a convict is sentenced to imprisonment in the penitentiary on two or more convictions, unless it is specifically ordered in the judgment entry that such sentences be served concurrently, such sentences shall be cumulative and shall be served consecutively ... beginning on the expiration of the preceding term."). Thus, the sentence for receiving stolen ran consecutive to all prior sentences imposed upon Mathis.

receiving stolen property case. *Mathis v. Hughes, et al.*, Civil Action No. 1:08-CV-277-MEF-TFM *Defendants' Exhibit K - Court Doc. No. 38-3* at 5. On November 1, 2007, law enforcement officials arrested Mathis on several charges of third degree burglary and returned him to the Houston County Jail. On November 7, 2007, Mathis was arrested on the alias warrant while incarcerated at the Houston County Jail. *Id*. at 7. On February 20, 2008, the court determined Mathis had "willfully failed and refused to pay his fines and costs" with respect to the condition pertaining to suspension of his receiving stolen property sentence and therefore ordered Mathis to "serve his fines and costs associated" with this conviction in the Houston County Jail. *Id*. It is therefore clear that as of February 20, 2008 Mathis' confinement in the jail related, at least in part, to the sentence imposed for his conviction for receiving stolen property. This sentence had not yet expired as the trial court suspended the sentence pending payment of costs and fines. In addition, the four-year sentence imposed on March 26, 2006 for third degree burglary remained in effect.

Mathis complains the defendants failed to provide him adequate medical treatment for chonic back pain*. Plaintiff's Complaint - Court Doc. No. 1* at 3. The defendants deny they acted with deliberate indifference to Mathis' back pain and, instead, maintain they provided Mathis with appropriate treatment for his condition.

To prevail on a constitutional claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing the treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052,

1058 (11th Cir.1986).  Specifically, jail medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).  When seeking relief based on deliberate indifference of responsible officials, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere

> incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that prison inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2001). Thus, for Mathis to survive summary

judgment on his deliberate indifference claim against the defendants, he is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The medical records filed herein demonstrate that during Mathis' confinement in the Houston County Jail medical personnel consistently provided treatment to Mathis for his back pain in accordance with their assessment of his condition. *Defendant's Exhibit A to the Affidavit of Jason Smoak (Houston County Jail Medical File of Raymond Mathis) - Court Doc. No. 16-4 thru Court Doc. No. 16-6.* The undisputed evidentiary materials before the court further demonstrate that the jail's medical staff routinely examined Mathis, thoroughly evaluated his complaints, ordered necessary tests, prescribed various medications and provided treatment for his back in accordance with their professional judgment. *Id.*; *Defendant's Exhibit 2 (July 21, 2008 Affidavit of Jason Smoak) - Court Doc. No. 16-3* at 2-15.

The affidavit filed by defendant Smoak addresses the claim before this court, in pertinent part, as follows:

> In addition to funding three full time nurse positions; one Certified Medical Assistant ["CMA"]; one full time Certified Physician's Assistant; a doctor contracted as the Clinic Medical Director and staff doctor; and, a registered supervising pharmacist for the provision of medical care to inmates such as the plaintiff, the [Houston] County Jail provides a general medical clinic for medical problems that may arise in the jail. The medical clinic is held daily, Monday through Friday. The jail also has a nurse or CMA on duty on Saturdays and Sundays. The clinic is staffed by the staff physician and/or myself as the Certified Physician's Assistant under the supervision of the physician. The nurses or CMA are in the Pods each day passing out inmate medications as well. Thus, inmates are given daily access to either the doctor or [physician's assistant] and nursing or CMA services, hospital emergency

room services, if necessary, and the general medical clinic.  Either I or the doctor are "on call" to the jail on a 24 hour a day, seven days a week, basis.

It is the policy of the Houston County Jail that all requests for medical treatment are forwarded to the jail's medical staff with the expectation that appropriate and necessary medical treatment will be provided to or obtained for the inmate.

The jail medical staff is committed to providing needed medical treatment to every inmate.  Based on my treatment to the plaintiff and my review of the plaintiff's jail medical file, the plaintiff was, during the period of time made the basis of Plaintiff's complaint, provided all necessary medical testing, treatment and care while in the Houston County Jail.  At all times alleged in Plaintiff's Complaint, he has been given and provided adequate and necessary medical treatment and has at all times relevant thereto been provided with all medically necessary medications.  Inmate Mathis has presented with numerous subjective complaints many of which could not be objectively verified.

Inmate Mathis' most recent incarceration in the Houston County Jail began November 1, 2007.  From November 1, 2007, through July 8, 2008, Mr. Mathis has been seen for treatment by Medical Clinic personnel at least 34 times.  All reasonable and necessary medical treatment has at all times been provided to inmate Mathis.  A summary of the medical treatment provided to the plaintiff [relevant to the claim presented in the instant complaint] is provided as follows:

Nov. 5, 2007:  Inmate Mathis came into the jail from the emergency room of the Southeast Alabama Medical Center (SAMC).  Orders from SAMC were reviewed and followed [including provision of blood pressure, hemorrhoid and anti-infection medications]....

Nov. 7, 2007:  Inmate Mathis was allowed to call home for his medications (i.e. blood pressure, allergy and pain medication).  No medications were obtained from his home so he was put on a Cold Pack twice a day for five days for his cold symptoms.

Nov. 9, 2007:  Inmate Mathis was seen in [the medical] clinic ... with subjective complaints [including] ... muscle spasm across right upper back for two weeks - hurts to lay on right side. [Medical personnel prescribed] Flexeril 10 mg by mouth twice a day for 14 days [as treatment for the back spasm].

***

13

Nov. 20, 2007: Inmate Mathis was seen in [the medical] clinic for complaints of sinus congestion.  Inmate Mathis was given a Cold Pack to be taken by mouth twice a day for 5 days.  Inmate Mathis also wanted an extra mat but due to no objective signs indicating a need for same, I denied his request for an extra mat at that time.

***

Dec. 10, 2007: Inmate Mathis was seen in [the medical] clinic ... with multiple subjective complaints [including] ... Lower and Upper Back Pain.  Upon examination, I found that he had mild subjective tenderness between his shoulder blades but no significant muscle spasm was found.  As for his lower back, there was no boney tenderness but muscularly he was subjectively tender across his lower back.  The following treatment [for his back] was provided: ...  [An] analgesic cream and ... a muscle relaxer Flexeril to be take[n] by mouth two times a day.  He was to return to clinic in two weeks.

Dec. 19, 200[7]: Inmate Mathis was seen in [the medical] clinic ... for complaints [including] ... back pain.  Mathis said that Flexeril had helped his back...  Upon examination of his back, I found no significant muscle spasm and only subjective [claims of] diffuse tenderness to touch was noted.  Objectively, I could not find any signs or symptoms of back pain or problems at that time....  For his subjective complaints of back pain, inmate claimed that he had seen Dr. Banner for back pain in the past.  Upon contacting Dr. Banner's office there was no record of Dr. Banner ever treating [Mathis] for back pain.  Dr. Banner's records revealed that he had only done a physical on the plaintiff.

Dec. 26, 2007: Inmate Mathis was seen in [the medical] clinic for follow up for back pain complaints.  Inmate claims that [his] back is still hurting and request[s] to see Dr. Banner.  Inmate says his back was good while he was on Flexeril.  Objectively, Nurse Cameron notes that

14

inmate [Mathis] is sitting on table moving from side to side rocking and sitting with elbow on knee showing no signs of pain or problems [with his back]. She spoke with me and I [prescribed] Naprosin 500 mg, twice a day for 21 days [which was provided to Mathis as prescribed.  Over the next three weeks, Mathis reported various complaints to the health care staff none of which related to back pain.]

***

Jan. 24, 2008:   Inmate Mathis to [the medical] clinic with complaints of back pain.  Inmate claims to have torn nerves in his back.  Inmate was referred to see [defendant Smoak the following] Monday to evaluate his present complaints.  In the mean time, the inmate was given ... Tylenol from Corrections Officers as needed [for pain relief].

Jan. 29, 2008:   Inmate [Mathis seen in the medical] clinic for complaints of back pain.  Inmate wants more medication as his prescription ran out.  Upon examination I found only diffuse/unspecific subjective lower back pain as inmate claimed to be tender to touch no matter where I touched him on his back. Objectively, I could find no indications to support the inmates subjective complaint.  In the interest of caution and based on his subjective complaints of pain; I prescribed Naproxyn 500 mg by mouth twice a day for 7 days, Flexeril 10 mg by mouth twice a day for 7 days.  I also prescribed Trazodone 50 mg by mouth at night to aid sleep.

***

Feb. 27, 2008:   Inmate Mathis was seen in [the medical] clinic pursuant to inmate request claiming back pain but when inmate presented to clinic he only complained about pain in his right shoulder.  The treatment provided was to put inmate on a Medrol Dose Pack [a steroid regimen] to be taken with food, Naprosyn 500

15

mg twice a day for 21 days, and Flexeril 10 mg twice a day for 14 days.

Mar.10, 2008:   Inmate Mathis to [the medical] clinic with complaint of right should pain for past 5 days.   Inmate is requesting an injection in his shoulder for the pain.   I told the inmate that he was witnessed playing football for one hour on Thursday March 6, 2008, throwing make shift football across [recreation] yard.   Asked inmate about playing football, and inmate stated "he was in too much pain that he had to play."   Inmate states ... he is hurting and ... demands something for pain or [immediate referral] to the hospital.

Upon examination inmates shoulder was found not to have any effusion or swelling, no subacromial tenderness, some positive tenderness anterior deltoid, full passive range of motion without pain, negative neer, questionable positive hawkins sign, inmate subjectively complained of pain in anterior deltoid with forward flexion greater than 100 degrees. Physical examination did not warrant an injection.   I tried to explain to inmate that an injection was not necessary and was not indicated.

Upon examination of his neck, no muscle spasm was noted, his right trap was subjectively tender to palpitation, but had full range of motion.   Right upper extremity was found to be unremarkable.

Treatment: For his right should pain, I told him to rest, continue Flexeril and Naprosyn as ordered for 2 weeks.

Note: Inmate left clinic verbally upset, stating what was going to happen (i.e. his filing of a lawsuit) was nothing personal, but he was not going to sit up here and hurt....

I also wrote a note further documenting that inmate wrote a request to be evaluated for right shoulder pain on March 3, 2008.   Thereafter, Inmate was witnessed by multiple personnel playing football ... on March 6, 2008, inmate witnessed throwing, jaming/blocking players off line, reaching over head to catch or knock down passes.   Inmate Mathis came to medical clinic

asking for shoulder injection.  Physical examination did not warrant an inter-articular injection.  I tried to explain to Inmate Mathis that his shoulder was hurting because he over used it and needs to rest.  Inmate became upset about not getting a shot and stated he needed to go to hospital, that he was not going to sit in here and hurt. Informed inmate that the plan for him was to:

1.  Rest with stretching exercises.

2.  Continue his Naprosyn.

3.  Continue his Flexeril.

Inmate was noted to be verbally upset and left clinic.

\*\*\*

Mar. 18, 2008:   Inmate Mathis was seen in clinic for followup on back.  Inmate states that back pain is still the same, I continued inmate on medications [previously] ordered until April 2, 2008.  Inmate also given Lamisil anti-fungal cream and a laxative for constipation.

\*\*\*

April 2, 2008:   Inmate  Mathis  was  seen  in  clinic  for multiple complaints.  Inmate's chief complains were of back pain, shoulder pain, constipation and hemorrhoids. As  treatment,  inmate  was  given  Preparation  H suppositories, Colace 100 mg by mouth twice a day and Milk of Magnesia every morning for three days for constipation.  For his complaint of right shoulder pain,  inmate  was  given  an  analgesic  muscle  rub cream.

April 14, 2008:  Inmate Mathis was seen in clinic with multiple complaints; right shoulder pain, neck pain, [etc.].... Upon examination right shoulder found to have subjectively positive subacromial tenderness with increased pain with forward flexion of greater than 90 degrees.  Examination of his lower back revealed subjective  diffuse  nonspecific  tenderness. Examination of his neck revealed subjective right

17

sided tenderness.
Plan:
1.  For right shoulder pain, put him back on Naprosyn 500 mg by mouth twice a day for 21 days.  To return to clinic in one week.
2.  For neck pain, put him on Flexeril 10 mg by mouth twice a day for 21 days....

April 15, 2008:   At my request, Dr. Banner examined Inmate Mathis and noted that the inmate states that he has chronic back pain and has had injections in the past.  Inmate also states his right shoulder is hurting causing his arm into hand to tingle and feel numb.   After examination, Dr. Banner informed inmate that playing football and soccer is going to aggravate his shoulder and back pain.  Inmate Mathis started shouting and wanted to know what playing football or soccer had to do with his pain.   Inmate repeatedly requested injection for pain and asked for a second medical opinion.
Plan: Will do record search for past medical history in an effort to find out if inmate actually has had past injections for pain.   Informed inmate not to play sports, try to obtain medical records from Dr. Ghori and medical records from clinic in Saginaw, Michigan.   We were unable to find the clinic in Michigan.... [R]ecords [obtained] from Dr. Ghori indicated that [Mathis'] tests were within normal limits.
No objective evidence of disease (i.e. nerve damage) with regard to inmate Mathis was found by Dr. Ghori.

May 5, 2008:   Inmate Mathis was seen in clinic with subjective complaints of back pain.  I talked with the inmate about our records search and that the telephone number for the clinic in Michigan he provided was a wrong number.   I informed inmate [Mathis] that people with chronic back pain do not get out and play football and basketball like he has been witnessed doing.  Inmate stated that he was not here for his back but only wanted a cold pack for sinus congestion.

18

.... I continued the inmate's Naprosyn 500 mg two times a day as needed.; Flexeril 10 mg two times a day for 21 days even though the inmate said he was not here for back pain on this visit.... [No further complaints of back pain received from Mathis for several weeks.]

\*\*\*

July 9, 2008:     Inmate Mathis was seen in Pod for complaint of upper back pain.  Inmate states that there is a knot under his right shoulder blade.  Asked inmate to locate area of pain and he was unable to locate the painful area.  It took inmate several seconds and several tries for inmate to locate painful area.  Inmate unexplainedly started rubbing back against door sill and then again tried to show painful area to me.

On physical examination, subjective tenderness noted on the right rhomboid muscle.  No masses noted.  No muscle spasms noted.  No bruising or swelling noted.  Moves all extremities without difficulty or pain.

Plan was for inmate to take Tylenol to be obtained from the guards three times a day as needed.  Subjective complaints did not match [the objective findings] and were inconsistent with physical examination.  Upon leaving inmates cell, inmate became upset and started shouting that "he knew what he needed and that was not Tylenol."  Inmate specifically asked for Flexeril and was told no.  Inmate started shouting obscenities.  I left cell and went to check on another inmate in the same Pod.  I Came back by inmate Mathis' cell.  Inmate was still shouting stating that "he will  slap me in my damn eye."  Note: During visit inmate repeated multiple times that he was trying to work with me, and he indicated that he would sue me if I did not work with him and give him the drugs he wants.  Informed inmate [Mathis] that [his] physical examination did not match his [subjective] complaints. Inmate became agitated and started shouting that I was neglecting his medical needs.   I again told inmate that his complaint[s] did not match his physical examination.

19

[Mathis made no further complaints to medical personnel regarding back pain until August 11, 2008.]

*Defendants' Exhibit 2 (July 21, 2008 Affidavit of Jason Smoak) - Court Doc. No. 16-3* at 2-15.

In an affidavit filed addressing a similar deliberate indifference claim presented in *Mathis v. Smoak*, 1:08-CV-548-MEF-TFM (M.D. Ala. 2008), Smoak continues with the following recitation of relevant treatment provided to Mathis for his complaints of back pain:

August 11, 2008:   Inmate Mathis was seen in the clinic for blood pressure check, back and leg pain, complaints of knot on right eye, denies pain [in eye].... [Defendant Smoak preformed a physical examination of Mathis, prescribed treatment in accordance with his objective findings and referred Mathis to a free-world gastroenterologist for a second opinion related to inmate's hemorrhoids.]

August 25, 2008:   Inmate Mathis was seen in the clinic with complaints of shoulder pain.  Upon physical examination, I noted that his left shoulder was essentially normal, inmate had subjective complaints of tenderness to palpation, radial pulse and capillary refill all normal, he had free range of motion with no muscle spasm noted. I prescribed inmate Mathis with Biofreeze muscle rub and Flexeril by mouth twice a day for seven days.

August 30, 2008:   I received a call from Dr. Banner about inmate Mathis having given a large assembly of [Mathis' prescribed] medicine to another inmate ... who took at least six (6) Claritin at one time.  That inmate was brought to the clinic and stated he had received that medicine from inmate Mathis....  Inmate Mathis' Claritin, Flexeril, Trazadone, Naprosyn all were discontinued at that time.  Inmate Mathis [was] sent to administrative segregation.

August 31, 2008:   I received a call from Sgt. Bonin stating that [another] inmate ... took more than twenty (20) Tylenol at once

which he received from inmate Mathis. [This other inmate] reported that inmate Mathis had additional Tylenol in his sock....

Sept. 3, 2008:   Inmate Mathis was seen in the clinic regarding his medications [and the discontinuation of the majority of such medications based on his hoarding the medications].

*Mathis v. Smoak*, 1:08-CV-548-MEF-TFM (M.D. Ala. 2008), *Defendants' Exhibit 1 (October 10, 2008 Affidavit of Jason Smoak) - Court Doc. No. 17-1* at 13-14.  Smoak's synopsis of the treatment provided to Mathis is supported by the medical records filed in the cases before this court and there is nothing before the court which undermines the validity of these records.

Under the circumstances of this case, it is clear that the course of treatment undertaken by the defendants was neither grossly incompetent nor inadequate.  Although Mathis asserts he should have been provided a different treatment regimen for pain relief, this assertion fails to establish deliberate indifference.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).  It is undisputed that Mathis received significant medical treatment as dictated by objective evaluations of his condition.  Based on well settled law cited herein, his mere

21

desire for a different mode of medical treatment does not amount to deliberate indifference. Mathis has failed to present any evidence which indicates the defendants knew the manner in which medical personnel treated his back pain created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Mathis' complaints of back pain. Consequently, summary judgment is due to be granted in favor of the defendants. *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before August 16, 2010 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of

issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 1st day of August, 2010.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

23